The TIMKEN COMPANY, Plaintiff,

v.

UNITED STATES, Defendant,

Koyo Seiko Co., Ltd. and Koyo Corporation of U.S.A.; NSK Ltd. and NSK Corporation, Defendant–Intervenors.

Court No. 90–10–00548.

United States Court of
International Trade.

Nov. 25, 1992.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., John M. Breen and Margaret E.O. Edozien; DC, Scott A. Scherff, Managing Atty., The Timken Co., Canton, Ohio, of counsel for plaintiff.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Dept. of Justice and Velta A. Melnbrencis; Joan L. MacKenzie, Atty.–Advisor, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, of counsel, DC, for defendant.

Powell, Goldstein, Frazer & Murphy, Peter O. Suchman, Susan P. Strommer and Niall P. Meagher, DC, for defendant-intervenors Koyo Seiko Co., Ltd. and Koyo Corp. of U.S.A.

Donohue and Donohue, Joseph F. Donohue, Jr. and Kathleen C. Inguaggiato, New York City, for defendant-intervenors NSK Ltd. and NSK Corp.

## OPINION

TSOUCALAS, Judge:

Plaintiff, The Timken Company ("Timken"), moves pursuant to Rule 56.1 of the Rules of this Court for judgment on the agency record. This motion challenges the final determination of the Department of Commerce, International Trade Administra-

tion ("Commerce" or "ITA"), in *Tapered Roller Bearings Four Inches or Less in Outside Diameter and Certain Components Thereof From Japan; Final Results of Antidumping Duty Administrative Review ("Final Results")*, 55 Fed.Reg. 38,720 (1990).

## BACKGROUND

The determination subject to review in this case covers the period from August 1, 1986 through July 31, 1987 of the antidumping duty order issued by the Department of the Treasury in *Tapered Roller Bearings and Certain Components From Japan,* 41 Fed.Reg. 34,974 (1976) (T.D. 76–227). This administrative review was commenced on September 21, 1987. *Initiation of Antidumping and Countervailing Duty Administrative Reviews; France et al.,* 52 Fed.Reg. 35,466–67 (1987). The preliminary results of the administrative review were published on August 16, 1989 and Commerce determined margins of 67.-40% for Koyo Seiko and 33.62% for NSK. *Tapered Roller Bearings Four Inches or Less in Outside Diameter and Certain Components Thereof From Japan; Preliminary Results of Antidumping Duty Administrative Review,* 54 Fed.Reg. 33,-749 (1989). Koyo's margin was subsequently changed to 33.66% because the Department changed its computer program. *See* Administrative Record ("AR") (Pub.) Doc. 303. On September 20, 1990, Commerce published the final results in this administrative review, establishing a dumping margin of 52.17% for Koyo Seiko and 35.00% for NSK. *Final Results,* 55 Fed. Reg. at 38,729.

### Discussion

■ In reviewing a final ITA determination, this Court must uphold that determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B) (1988 & 1992 Supp.). Substantial evidence has been defined as being "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to sup-

port a conclusion." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 477, 71 S.Ct. 456, 459, 95 L.Ed. 456 (1951) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)).

### I. *Collection of Interest on Estimated Duty Deposits*

■ Plaintiff's first contention is that Commerce improperly failed to collect interest on bonds which were posted by NSK and Koyo to cover estimated antidumping duties on the tapered roller bearings at issue. In its determination, Commerce determined that bond posting would not require collection of any interest from Koyo and NSK. *Final Results,* 55 Fed.Reg. at 38,726.

Pursuant to 19 U.S.C. § 1677g(a) (1992 Supp.), interest is collectable on "overpayments and underpayments of amounts deposited on merchandise entered, or withdrawn from warehouse...." The issue of interest collection was raised before this Court in *The Timken Co. v. United States ("Timken I"),* 15 CIT ——, 777 F.Supp. 20 (1991). In *Timken I,* this Court held that the statute requires interest only upon underpayments and overpayments of actual *cash deposits* against dumping duties found to be due, and not in a case in which importers posted a *bond. Id.*

Plaintiff, however, urges the Court to reconsider this issue. It claims that the entries covered in *Timken I* were nearly all made prior to 1980 at a time when the statute did not require the collection of interest. It further claims that the entries covered by this action were made during 1986–87, subsequent to the enactment and amendment of the interest provision, 19 U.S.C. § 1677g.

Regardless of plaintiff's contentions, the statutory language is clear on its face that interest is collectable only on deposits and not on bonds. In *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984), the Supreme Court stated that when evaluating an agency's statutory interpretation, the question is "whether Congress

has directly spoken to the precise question at issue." *Id.* at 842, 104 S.Ct. at 2781. The Court further stated that if "the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43, 104 S.Ct. at 2781. Furthermore, the statutory law is replete with references to "amounts deposited." *See* 19 U.S.C. §§ 1677g, 1673f(b) and 1675(a) (1988 & 1992 Supp.). There is no mention in any of these sections of amounts subject to a bond.

On other occasions, Congress has linked deposits and bonds together. *See* 19 U.S.C. §§ 1673b(d)(2) and 1673d(c)(1)(B) (1988 & 1992 Supp.). The references in these sections to "cash deposit, bond, or other security," in the provisions are evidence that Congress knew how to specify bonds and other security when it wished to do so. Furthermore, plaintiff has not presented any new argument that would contradict Commerce's determination that "amounts deposited" do not include posted bonds. Thus, the ITA's determination on this issue was reasonable, supported by substantial evidence and in accordance with law and, therefore, is affirmed.

## II. *Cost of Production Adjustment*

■ Plaintiff also challenges the ITA's use of Koyo's responses in determining Cost of Production ("COP"). Although Commerce "discovered minor errors in Koyo's COP response at verification," it decided that the responses "sufficiently supported its methodology of reporting costs." *Final Results*, 55 Fed.Reg. at 38,-723. Plaintiff alleges that since there were significant omissions in data, then Commerce should have resorted to the "best information available" standard in determining COP pursuant to 19 U.S.C. § 1677e(c). Specifically, plaintiff challenges the adjustments for material costs, labor costs and factory overhead.

### A. Material Costs

In verifying cost of material information the ITA relied in part on engineering draw-ings of the product's theoretical production requirements. *Final Results*, 55 Fed.Reg. at 38,723. In addition, the standard costs given for the six month review period were adjusted by a "variance based upon actual costs and quantities produced during the same six months' period." *Defendant's Memorandum in Partial Opposition to Plaintiff's Motion for Judgment Upon the Agency Record* at 17. The ITA also conducted five traces of the cost of materials utilized in production. *Id.* at 17 n. 22; AR (Pub.) Doc. 200 at 32.

### B. Labor Costs

Regarding labor costs, Koyo responded to the investigative questionnaire by calculating a single three month variance which combined variances for direct labor and direct factory overhead. *Final Results*, 55 Fed.Reg. at 38,723. The variance was then applied to an estimation of basic labor costs derived from doubling the labor costs of a three month portion of the review period. The resulting figure represented the wages per processing cost center. *Id.*

Commerce also verified that Koyo's cost variances reflected the experience at both plants which produce TRB's within the scope of the finding. *Id.* In addition, it reconciled reported costs with Ministry of Finance reports on labor costs. AR (Conf.) Doc. 50 at 40–41.

### C. Factory Overhead

Plaintiff also challenges the accuracy of the ITA's verification of the reported factory overhead costs. Specifically, plaintiff contests the failure of the ITA to determine this adjustment on costs allocated to particular parts. The ITA instead chose to verify the total overhead cost. *Plaintiff's Brief* at 15; *Final Results*, 55 Fed.Reg. at 38,723.

*Commerce's Selection of COP Data Was Reasonable*

The ITA "must verify all information which constitutes a basis for its final determination." *NTN Bearing Corp. of America v. United States*, 14 CIT —, —, 747 F.Supp. 726, 737 (1990). In accomplishing this task, whenever a significant number of

sales or price adjustments are involved, Commerce is authorized to select "averaging or generally recognized sampling techniques," pursuant to 19 U.S.C. § 1677f–1(a)(1). This Court has previously held in *GMN Georg Muller Nurnberg AG v. United States*, 15 CIT ——, ——, 763 F.Supp. 607, 612 (1991), that:

> In light of the legislative interest in affording the agency greater flexibility and given the use of permissive rather than compulsory language in the wording of the statute, however, the Court is not convinced that Congress intended to limit Commerce's authority to the application of the sampling schemes enunciated therein.

The methodology selected by Commerce is to be upheld if "legally adequate and the results of the sampling have not been shown to be unrepresentative." *Asociacion Colombiana de Exportadores v. United States*, 13 CIT 13, 22, 704 F.Supp. 1114, 1122, *aff'd*, 901 F.2d 1089 (Fed.Cir. 1989), *cert. denied*, 498 U.S. 848, 111 S.Ct. 136, 112 L.Ed.2d 103 (1990). *See Smith Corona Corp. v. United States*, 15 CIT ——, ——, 771 F.Supp. 389, 401 (1991) (Commerce's discretion is limited to provide an alternative methodology which is not "unrepresentative or otherwise distortive of the results."). Review of the verification must also take into consideration that "[v]erification is a spot check and is not intended to be an exhaustive examination of the respondent's business." *Monsanto Co. v. United States*, 12 CIT 937, 944, 698 F.Supp. 275, 281 (1988).

In this case, the Court is convinced that Commerce acted reasonably in using Koyo's responses in determining cost of production. Furthermore, Timken has offered no evidence to show that Koyo's information was unreliable, nor have they offered any data more probative than Koyo's. Therefore, this Court finds that Commerce acted reasonably in using Koyo's data and Commerce's determination is affirmed as to this issue.

## III. *Adjustment of Credit Expenses for Compensating Balances*

■ Plaintiff's third claim is that Commerce erroneously used NSK's home market credit expense that took account of so-called "compensating balances." Compensating balances are bank deposits held as security for outstanding loans. Many banks require a borrower to maintain an average account balance equal to a percentage of the outstanding loan, which effectively raises the real interest rate on the loan. *See PPG Indus., Inc. v. United States*, 14 CIT ——, ——, 746 F.Supp. 119, 124 n. 8 (1990).

Commerce claims that it found the deposit of compensating balances a requirement of NSK's loan agreements and, therefore, granted a corresponding adjustment in the home market credit costs necessary for maintenance of a credit line. Timken avers that the expense was not properly verified and that the adjustment was incorrectly allowed by the ITA.

Plaintiff bases its claim on two unrelated final determinations. *See Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From the Federal Republic of Germany; Final Results of Antidumping Duty Administrative Review*, 56 Fed.Reg. 31,692, 31,724 (1991); *Tapered Roller Bearings, Four Inches or Less in Outside Diameter and Certain Components Thereof, From Japan; Final Results of Antidumping Duty Administrative Review*, 56 Fed.Reg. 26,054, 26,060 (1991).

The Court, however, must limit the scope of its review to the facts of the administrative determination before it. *See Daewoo Elecs. Co. v. United States*, 13 CIT 253, 274, 712 F.Supp. 931, 951 (1989); *Beker Indus. Corp. v. United States*, 7 CIT 313, 315, 1984 WL 3727 (1984); *Silver Reed America, Inc. v. United States*, 9 CIT 221, 225, 1985 WL 25761 (1985).

Timken also claims that the evidence on the record fails to substantiate whether the funds deposited with NSK's bank were deposited as a prerequisite for obtaining loans. Commerce rejected this argument claiming that:

> We examined and reviewed NSK's documents at verification. NSK supported

the figures in its home market interest expense worksheets. As we have made this adjustment in the past, we based our calculations on the borrowing experience of the respondent and the interest rate actually paid.

*Final Results,* 55 Fed.Reg. at 38,724.

Upon reviewing the verification report and all other evidence on the record, this Court finds that the evidence on the record indicates that funds deposited with NSK's bank were deposited as a prerequisite for obtaining loans. *See* AR (Pub.) Doc. 27 at 5, Exhibit 8; AR (Pub.) Doc. 201. Therefore, Commerce's determination as to this issue is affirmed.

### IV. *Programming Errors*

Plaintiff's final claim is that Commerce committed several computer programming errors in its calculation of the final margins for both Koyo and NSK.

All parties agree that a remand is necessary to correct these errors. Therefore, this case is remanded to Commerce for correction of all computer programming errors.

### CONCLUSION

In accordance with the foregoing opinion, this case is remanded to Commerce to correct all computer programming errors. Commerce's determination is affirmed in all other respects. Remand results are due within thirty (30) days of the date this opinion is entered. Any comments or responses by the parties to the remand results are due within fifteen (15) days thereafter. Any rebuttal comments are due within fifteen days (15) of the date responses or comments are due.

### PARTIAL JUDGMENT

This case having been duly submitted for decision and the Court, after due deliberation, having rendered a decision herein; now, in accordance with said decision, it is hereby

ORDERED that plaintiff's motion for judgment on the agency record is granted in part and this case is remanded to the

Department of Commerce, International Trade Administration ("Commerce"), for correction of all computer programming errors; and it is further

ORDERED that Commerce's determination is affirmed in all other respects.