**SHARP ELECTRONICS CORPORATION, Plaintiff–Appellant,**

v.

**The UNITED STATES, Defendant–Appellee.**

**No. 97–1112.**

United States Court of Appeals, Federal Circuit.

Sept. 17, 1997.

Fusae Nara, Donovan Leisure Newton & Irvine, New York City, argued, for plaintiff–appellant. With him on brief were Peter J. Gartland and David S. Versfelt.

James A. Curley, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, International Trade Field Office, New York City, argued, for defendant–appellee. With him on brief were Frank W. Hunger, Assistant Attorney General and David M. Cohen, Director, Washington, DC, and Joseph I. Liebman, Attorney in Charge, International Trade Field Office. Of counsel on brief were Edward N. Maurer, Acting Deputy Assistant Chief Counsel, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, and Joan L. MacKenzie, Attorney, Office of Chief Counsel for Import Administration, Department of Commerce, Washington, DC.

Before MICHEL, PLAGER and BRYSON, Circuit Judges.

Opinion for the court filed by Circuit Judge MICHEL. Circuit Judge PLAGER concurred in the opinion and filed a separate opinion.

MICHEL, Circuit Judge.

Sharp Electronics Corporation ("Sharp") appeals the August 12, 1996 judgment of the United States Court of International Trade upholding by summary judgment the United States Customs Service's ("Customs") decision that Sharp was liable for interest on its underpayment of antidumping duties for television receivers imported by Sharp between June 5, 1981 and August 28, 1989. *Sharp Elec. Corp. v. United States*, 18 I.T.R.D.2078, 1996 WL 470665, No. 93–07–00384 (Ct. Int'l Trade Aug. 12, 1996). This appeal was submitted for our decision following oral argument on August 7, 1997. Because the statute requiring interest applies on the facts of this case, we affirm.

On March 8, 1971, the Department of Treasury issued a dumping finding that subjected Sharp to antidumping duties for television receivers it imported from Japan into the United States. On April 28, 1980, Sharp entered into an agreement with the U.S. government settling all pending claims for antidumping duties. With respect to television sets entered subsequent to March 21, 1979, the parties agreed that antidumping duties and liquidation of entries would be based upon data submitted by Sharp pursuant to the administrative review process of the Trade Agreements Act of 1979 ("the 1979 Act"). Under the 1979 Act, Sharp was required to make a cash deposit of assessed estimated antidumping duties. On June 5, 1981, the Department of Commerce ("Commerce"), which succeeded the Treasury Department in administering the antidumping duty laws, entered the results of the first administrative review of the 1971 dumping finding. Commerce assessed a 0.3% dumping margin for Sharp, but because the margin was *de minimis* (defined administratively as less than 0.5%), Commerce waived Sharp's cash deposit of estimated duties required under the 1979 Act.

On August 28, 1989, Commerce entered the results of its second administrative review, assessing a 0.86% dumping margin for Sharp. Since this amount was over the 0.5% *de minimis* limit, Sharp for the first time was required actually to make cash deposits for entries on or after August 28, 1989. In

1992, Commerce entered liquidation instructions directing that Customs assess final antidumping duty liability subject to section 778 of the Tariff Act, 19 U.S.C. § 1677g (1988), which required interest on any underpayments of the amount deposited as estimated antidumping duties compared to the duties as finally assessed. Customs thereafter assessed interest against Sharp with respect to Sharp's entries between June 5, 1981 and August 28, 1989 for which the cash deposit had been waived. Sharp filed a protest asserting that it was not obligated to pay interest for underpayments when the cash deposit had been waived. Customs denied the protest. The Court of International Trade upheld Customs' decision, and Sharp appealed to this court.

The statute in question simply provides:

(a) General rule

Interest shall be payable on overpayments and *underpayments* of *amounts deposited* on merchandise entered, or withdrawn from warehouse, for consumption on and after—

(1) the date of publication of a countervailing or antidumping duty order under this subtitle or section 1303 of this title, or

(2) the date of a finding under the Antidumping Act, 1921. 19 U.S.C. § 1677g (1988) (emphasis added).

We review the Court of International Trade's summary judgment for correctness as a matter of law, deciding de novo the proper interpretation of the governing statute as well as whether genuine issues of material fact were shown. *Guess? Inc. v. United States,* 944 F.2d 855, 857 (Fed.Cir. 1991). An absurd construction of a statutory provision should be avoided. *Witco Chem. Corp. v. United States,* 742 F.2d 615, 619 (Fed.Cir.1984).

Sharp argues that because of Commerce's waiver of the deposit, Sharp cannot be charged interest on its 100% deficient payment despite the requirements of section 1677g. Sharp reasons that the interest provision only applies, by its express terms, to "amounts deposited" and Sharp deposited no amount.

We disagree. To be sure, section 1677g speaks in terms of "amounts deposit-

ed," but it also speaks to "underpayments." Here, the underpayment was 100% of the final assessed duty. Therefore, interest is due on the entire assessment, unless the provision only applies when "amounts" are actually "deposited." We hold the provision applies whenever such amounts are statutorily owed, whether or not actually deposited, because any other result would be absurd.

The trial court adopted the reasoning of its previous decision in *American Hi-Fi International Inc. v. United States,* 936 F.Supp. 1032 (Ct. Int'l Trade 1996). In *American Hi-Fi,* the importer was initially assessed a zero cash deposit of estimated duties. Upon a final assessment, a duty was assessed and the importer was required to pay the interest on the 100% underpayment. *Id.* at 1035. The trial court found no relevant distinction between a zero cash deposit and the waiver of a cash deposit for a *de minimis* margin. Although not bound by decisions of the trial court, we agree. In either case, interest would be due on any underpayment.

Sharp argues, however, that this court's decision in *Timken Co. v. United States,* 37 F.3d 1470 (Fed.Cir.1994), controls, and blocks reliance on *American Hi-Fi.* In *Timken,* this court held that the interest obligation of section 1677g arises only when cash deposits rather than security bonds are required by law. *Id.* at 1476–77. Therefore, we ruled interest was not assessable on duty underpayments when the importer had posted a bond, but suggested interest would be assessable when an importer is statutorily obligated to make a cash deposit. *Id.* at 1477. The facts of the present case, however, do not involve a bond as required of *Timken,* but do involve a cash deposit, albeit waived because of a *de minimis* margin. *Timken,* therefore, does not support Sharp's arguments, but rather Customs' ruling and hence the trial court's decision.

Sharp relies on one sentence from the opinion in *Timken,* which states: "In order to be liable for or entitled to interest under section 1677g(a), exporters must have made cash deposits of estimated duties." *Id.* Sharp, however, has taken that sentence out of the context of the decision, which was not addressed to the distinction between deposits

paid and deposits assessed, but was addressed to the distinction between cases in which a bond is posted and cases in which a cash deposit is required. The *Timken* opinion elsewhere states the principle that directly supports the government's position in this case: "Thus, section 1677g(a) requires payment of interest on the difference between deposited amounts of estimated duties and final assessed duties." *Id.* at 1474.

Sharp also relies on this court's decision in *Koyo Seiko, Ltd. v. United States,* 95 F.3d 1094 (Fed.Cir.1996). *Koyo,* however, dealt with interpretation of the "cap" provision of 19 U.S.C. § 1673f setting a ceiling on antidumping duties if a cash deposit was made but the duties as finally assessed were higher. The importer in *Koyo* made neither a cash deposit of estimated antidumping duties, nor posted a bond, and this court held that the "cap" of section 1673f was inapplicable in the absence of a cash deposit or a bond. *Id.* at 1098. The court noted that to apply the "cap" provision of section 1673f "would enable Koyo to escape payment of the antidumping duties that finally have been assessed against it." *Id.* Avoidance of those duties "would contravene '[t]he purpose of the antidumping statute....'" *Id.* (quoting *Koyo Seiko Co. v. United States,* 20 F.3d 1156, 1159 (Fed.Cir.1994)).

Following the reasoning applied in *Koyo,* allowing Sharp to avoid paying all interest because its initial *de minimis* margin led to a waiver of any cash deposit would contravene the purpose of section 1677g. Under Sharp's interpretation of the statute, a first importer who actually made an initial statutorily required deposit, no matter how small, would be required to pay interest on additional duties later found owing, but a second importer whose deposit was waived, for the sake of administrative convenience, would be able to avoid paying any interest on duties later found owing. This result would be so even if the total interest required to be paid by the first importer was substantially less than any interest obligation imposed on the second importer. The result would be inequitable as between them. We, therefore, do not accept Sharp's theory for it is illogical and inequitable.

Our holding in this case comports with the policy of the 1979 Act and the intent of Congress as implied by the overall statutory scheme. To read section 1677g so literally as to impose liability for interest payments only when cash deposits are actually made would produce absurd results. For instance, it is clear to us that if an importer simply refused to make a cash deposit, contrary to its statutory obligation and an explicit order of Customs, interest would nevertheless be owed on the underpayment of any duties finally assessed. Here, although Commerce waived the statutory cash deposit requirement for its own administrative ease, Sharp still was legally liable for paying estimated duties and thus for the interest on any underpayment compared to the final duty assessment. Any other result would be absurd, and adopting Sharp's construction would require us to attribute a foolish motive to Congress which we will not do.

We have considered Sharp's other arguments and find them unpersuasive. Therefore, for the reasons stated above, the summary judgment of the United States Court of International Trade in favor of the government that Sharp does owe interest on its underpayment of duties is *AFFIRMED.*

PLAGER, Circuit Judge, concurring.

The statute plainly says what Sharp, the losing party in this case, says it says. Ordinarily that is more than sufficient for Sharp to have been the winner in this appeal. That the court arrives at the opposite conclusion illustrates only that this is one of those rare cases in which the purpose of Congress is so manifestly clear and the opposite result so silly, that to rule otherwise and require Congress to say it again with a few additional words would be even sillier. Though it is not the role of the courts to rewrite legislation to make it say what we think it should say, there are a few cases in which it may be proper for us to do so. Such cases involve no significant policy issues, but at most turn on the avoidance of a hyper-technical reading regarding which the Congressional purpose is beyond cavil. This is one of those rare cases.