**Slip Op. 00-98**

# United States Court of International Trade

<table>
<tr><td>

FUJITSU GENERAL AMERICA, INC.,
SUCCESSOR-IN-INTEREST TO TEKNIKA,
ELECTRONICS CORP.,

              Plaintiff,

    v.

UNITED STATES,

              Defendant.

</td><td>

Before: Pogue, Judge

Consol. Ct. No. 98-08-02748

</td></tr>
</table>

[Plaintiff's motion for summary judgment denied; Defendant's cross-motion for summary judgment granted.]

Decided: August 15, 2000

Greenberg Traurig LLP, (Brian S. Goldstein) for Plaintiff.

David W. Ogden, Assistant Attorney General, John J. Mahon, Assistant Branch Director, International Trade Field Office, James A. Curley, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; Chi S. Choy, Office of Assistant Chief Counsel, International Trade Litigation, U.S. Customs Service, Of Counsel; Melanie A. Frank, Office of Assistant Chief Counsel for Import Administration, U.S. Department of Commerce, Of Counsel, for Defendant.

## OPINION

**Pogue, Judge:** Plaintiff Fujitsu General America, Inc. ("Fujitsu")

moves for summary judgment pursuant to USCIT Rule 56.[1]

---

[1]This matter originated as two separate court actions, No. 98-08-02748 and No. 98-09-02900, brought by Fujitsu. Because the

Specifically, Fujitsu moves this Court to order the U.S. Customs Service ("Customs") to refund to Fujitsu all antidumping duties and interest assessed by Customs on certain of Fujitsu's entries upon liquidation.[2] Fujitsu claims that it is entitled to an antidumping duty refund because the entries in issue were "deemed liquidated," or liquidated by operation of law, not at the rate assessed by Customs, but "at the rate of duty, value, quantity, and amount of duty asserted at the time of entry by the importer of record" pursuant to 19 U.S.C. § 1504(d).  In the alternative, Fujitsu asserts that, if the entries were not deemed liquidated, Customs should not have assessed interest.  In turn, if Customs properly assessed interest on the antidumping duty payments, Fujitsu claims that Customs should have charged simple, rather than compound, interest.

---

two actions shared the same legal issues as well as the same basic circumstances, however, the Court, with the parties' approval, *sua sponte* consolidated the actions.

Party briefs submitted under Court No. 98-08-02748 will be marked "I," and briefs submitted under Court No. 98-09-02900 will be marked "II."  For instance, we will cite to Fujitsu's memorandum of law in support of its motion for summary judgment filed under Court No. 98-08-02748 as "Pl.'s Mem. in Supp. of Mot. SJ I," and we will to cite to Fujitsu's memorandum of law in support of its motion for summary judgment filed under Court No. 98-09-02900 as "Pl.'s Mem. in Supp. of Mot. SJ II."

[2]"Liquidation" is "the final computation or ascertainment of the duties or drawback accruing on an entry."  19 C.F.R. § 159.1 (1997).

Defendant, the United States, cross-moves for summary judgment under USCIT Rule 56, contending that Customs properly liquidated Fujitsu's entries at the antidumping duty rate calculated by the U.S. Department of Commerce ("Commerce") and properly charged interest at the compound rate.

### Background

The merchandise in issue consists of televisions from Japan manufactured by Fujitsu General Limited (formerly known as General Corporation) and imported into the United States by Teknika Electronics Corp.[3]

Imports of televisions from Japan are subject to a 1971 antidumping duty finding by the Treasury Department under the Antidumping Act, 1921, 19 U.S.C. §§ 160-173 (1970). See Television Receiving Sets, Monochrome and Color, From Japan, 36 Fed. Reg. 4,597 (Dep't Treas., Mar. 10, 1971)(antidumping finding). In 1980, the functions of administering the antidumping law were transferred from the Secretary of the Treasury to the Secretary of Commerce.[4]

_____

[3]Plaintiff Fujitsu is the successor-in-interest to Teknika Electronics Corp. For the sake of clarity, the Court will hereafter simply refer to Fujitsu as if it were the actual importer.

[4]The Trade Agreements Act of 1979 repealed the Antidumping Act, 1921, and enacted a new antidumping law as part of Title VII

Because Treasury's finding covering imports of Japanese televisions remained in effect on January 1, 1980, the effective date of the Trade Agreements Act of 1979, the amount of duties imposed under the finding became subject to periodic reviews administered by Commerce pursuant to 19 U.S.C. § 1675(a).

Under the administrative review scheme,

> At least once during each 12-month period beginning on the anniversary of the date of publication of . . . an antidumping duty order under [19 U.S.C. § 1673e] or a finding under the Antidumping Act, 1921, . . . [Commerce] . . . shall . . . review, and determine . . . the amount of any antidumping duty, and . . . shall publish in the Federal Register the results of such review, together with notice of any duty to be assessed [and] estimated duty to be deposited . . . .

19 U.S.C. § 1675(a)(1994).[5] Thus, upon completion of an administrative review and liquidation, antidumping duties are assessed on the entries of imports covered by the review period, and cash deposits of estimated antidumping duties are collected for all future entries.

On February 11, 1991, Commerce published the final results of an administrative review that covered, for entries of Fujitsu

---

of the Tariff Act of 1930. See Pub. L. 96-39, Title I, §§ 101, 106(a), 93 Stat. 150-189, 193 (1979). Administration of the law was simultaneously transferred from Treasury to Commerce.

[5]Although the administrative reviews applicable to this case were conducted under prior versions of 19 U.S.C. § 1675, the relevant language has essentially remained the same.

General Limited, the periods March 1, 1986, through February 28, 1987; March 1, 1987, through February 29, 1988; and March 1, 1989, through February 28, 1990.  See Television Receivers, Monochrome and Color, from Japan, 56 Fed. Reg. 5,392 (Dep't Commerce, Feb. 11, 1991)(final results admin. review)("Final Results of February 11, 1991").  In this review, Commerce calculated a 35.40% dumping margin for Fujitsu General Limited.  See id. at 5,401.

Pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii), Fujitsu General Limited brought suit in the Court of International Trade ("CIT"), challenging the antidumping duty rate found by Commerce in the Final Results of February 11, 1991.  At the outset of the litigation, the CIT ordered a preliminary injunction pursuant to 19 U.S.C. § 1516a(c)(2), which enjoined liquidation of Fujitsu General Limited televisions entered from March 20, 1986, through March 11, 1988 (the "subject entries").  Thus, the court suspended the liquidation of the subject entries of televisions at the antidumping rate determined by Commerce in the Final Results of February 11, 1991.

On April 27, 1993, Commerce filed a motion with the court requesting that the case be remanded with respect to seven issues raised by Fujitsu General Limited.  The court granted Commerce's motion.  Subsequently, on March 28, 1994, Commerce filed its remand

determination with the court.  On remand, Commerce reduced the antidumping margin it had previously found in the Final Results of February 11, 1991 to 26.17%.  On March 14, 1995, the CIT affirmed Commerce's Final Results of February 11, 1991, as modified by Commerce's remand determination ("Modified Final Results of February 11, 1991").  See Fujitsu General Ltd. v. United States, 19 CIT 359, 883 F. Supp. 728 (1995).  Following appeal, the Federal Circuit affirmed the CIT's decision on July 3, 1996, see Fujitsu General Ltd. v. United States, 88 F.3d 1034 (Fed. Cir. 1996), and issued its mandate on August 26, 1996.

On September 16, 1997, Commerce published notice of the Federal Circuit's July 3, 1996, decision affirming Commerce's Modified Final Results of February 11, 1991. Television Receivers, Monochrome and Color, From Japan, 62 Fed. Reg. 48,592 (Dep't Commerce, Sept. 16, 1997)(notice of final court decision and am. final results admin. review).  On September 26, 1997, Commerce sent liquidation instructions to Customs via e-mail.  See Liquidation Instructions for Television Receivers, Monochrome and Color, from Japan Manufactured and/or Exported by Fujitsu General Limited for the Periods March 1, 1986 through February 28, 1997; March 1, 1987 through February 29, 1988; and March 1, 1989 through February 28, 1990 (A-588-015) (Dep't Commerce, Sept. 26, 1997)("Liquidation

Instructions")(attached to Def.'s Reply Br. to Pl.'s Opp'n to Def.'s Cross-Mot. for SJ II ("Def.'s Reply Br. II")). Subsequently, during November 1997, December 1997, and February 1998, Customs liquidated the subject entries.

On February 11, 1998, Fujitsu filed Protest No. 2704-98-100059 with Customs pursuant to 19 U.S.C. § 1514 (1994), against Customs' liquidations of subject entries on November 14, 1997, and December 5, 1997. See Protest No. 2704-98-100059 (Pl.'s Mem. in Supp. of Mot. SJ I, Ex. 1). Fujitsu's protest challenged Customs' assessment of interest on the subject entries, and alternatively, Customs' assessment of interest at a compound rate. See id. Customs denied Fujitsu's protest on March 11, 1998. See Pl.'s Mem. in Supp. of Mot. SJ I, Ex. 2. On April 15, 1998, Fujitsu sent a letter to Customs arguing that the entries listed in Protest No. 2704-98-100059 "must be deemed liquidated by operation of law at the rate and amount of antidumping duties asserted at the time of entry by the importer of record, i.e., zero antidumping duties." Pl.'s April 15, 1998, Letter to Customs (Pl.'s Mem. in Supp. of Mot. SJ I, Ex. 3). By letter of June 8, 1998, Customs acknowledged receipt of Fujitsu's deemed liquidation argument, but declined to reconsider its denial of Protest No. 2704-98-100059. See Customs' June 8, 1998, Letter to Pl. (Pl.'s Mem. in Supp. of Mot. SJ I, Ex.

4).

Also on February 11, 1998, Fujitsu filed Protest No. 3001-98-100026 with Customs, against Customs' liquidations of entries on November 28, 1997. See Protest No. 3001-98-100026 (Pl.'s Mem. in Supp. of Mot. SJ II, Ex. 4). As with Protest No. 2704-98-100059, this protest challenged Customs' assessment of interest on the subject entries, and alternatively, Customs' assessment of interest at a compound rate. See id. On March 30, 1998, Fujitsu filed with Customs an additional claim to supplement Protest No. 3001-98-100026, again arguing that Customs' assessment of antidumping duty principal on the entries liquidated on November 28, 1997, was unlawful because these entries were deemed liquidated by operation of law at the rate and amount of antidumping duties asserted at the time of entry by the importer of record. See Pl.'s Mar. 30, 1998, Letter to Customs (Pl.'s Mem. in Supp. of Mot. SJ II, Ex. 5). On April 22, 1998, Customs denied Fujitsu's protest. See Pl.'s Mem. in Supp. of Mot. SJ II, Ex. 6.

Finally, Fujitsu filed Protest No. 5301-98-100053 with Customs on March 24, 1998, against Customs' liquidation of entry 86-222766-5 on February 27, 1998. See Protest No. 5301-98-100053 (Pl.'s Mem. in Supp. of Mot. SJ II, Ex. 1). As with the others, this protest challenged Customs' assessment of interest on the subject entries,

and alternatively, Customs' assessment of interest at a compound rate. See id. On April 1, 1998, Fujitsu again submitted a supplemental deemed liquidation claim. See Pl.'s Apr. 1, 1998, Letter to Customs (Pl.'s Mem. in Supp. of Mot. SJ II, Ex. 2). On April 10, 1998, Customs denied Protest No. 5301-98-100053. See Pl.'s Mem. in Supp. of Mot. SJ II, Ex. 3.

Subsequently, Fujitsu filed two actions in this Court addressing the entries covered by the above protests. Now, in reviewing Fujitsu's and Defendant's cross-motions for summary judgment, we are presented with the following legal issues: (1) whether the Court has jurisdiction to decide Fujitsu's deemed liquidation claim; (2) if so, whether Fujitsu's entries were deemed liquidated; (3) if Fujitsu's entries were not deemed liquidated, whether Customs properly assessed interest thereon even though no cash deposits of estimated antidumping duties were required; and (4) if the assessment of interest was proper, whether Customs properly assessed interest at the compound rate.

## Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  USCIT Rule 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  Here, there are no genuine issues of material fact.  The issues to be resolved are legal in nature, and therefore, summary judgment is appropriate. See USCIT Rule 56(c).

### Discussion

**I.  Does the Court have jurisdiction to hear Fujitsu's deemed liquidation claim?**

Fujitsu argues,

> Although [Commerce] correctly calculated the antidumping duty principal, Customs' assessment of the antidumping duty principal for the subject entries is unlawful.  The entries must be deemed liquidated by operation of law at the rate and amount of antidumping duties asserted at the time of entry by the importer of record, *i.e.*, zero antidumping duties pursuant to 19 U.S.C. § 1504(d)(1994).

Pl.'s Mem. in Supp. of Mot. SJ II at 7-8.

The deemed liquidation provision, 19 U.S.C. § 1504(d)(1988 & Supp. V 1993), states,

> When a suspension required by statute or court order is removed, the Customs Service shall liquidate the entry within 6 months after receiving notice of the removal from the Department of Commerce, other agency, or a court with jurisdiction over the entry.  Any entry not liquidated by the Customs Service within 6 months after

receiving such notice shall be treated as having been
liquidated at the rate of duty, value, quantity, and
amount of duty asserted at the time of entry by the
importer of record.[6]

Here, liquidation of the subject entries was first suspended
as required by statute, 19 U.S.C. § 1675(a), as Commerce conducted
the administrative reviews it would eventually issue in the Final
Results of February 11, 1991.  See United States v. Jick (USA)
Indus. Corp., 22 CIT ____, ____, 27 F. Supp. 2d 199, 200-01
(1998)("To establish harmonious interpretations of section 1675(a)
and section 1504(d), this Court has held that because of 1675(a),
the suspension of liquidation during the annual review is required
by statute.")(citing Ambassador Div. of Florsheim Shoe v. United

---

[6]Pub. L. 103-465, Title II, § 220(c)(2), 108 Stat. 4865
(1994), amended the first sentence of 19 U.S.C. § 1504(d) to
state,

> Except as provided in section 1675(a)(3) of this title,
> when a suspension required by statute or court order is
> removed, the Customs Service shall liquidate the entry
> within 6 months after receiving notice of the removal
> from the Department of Commerce, other agency, or a
> court with jurisdiction over the entry.

The underlined portion constitutes the amendment.  The amendment
is only applicable to administrative reviews initiated after
January 1, 1995.  Because, here, Commerce completed the subject
administrative reviews on February 11, 1991, the amendment does
not apply in this case.  Therefore, the Court cites to the prior
version of 19 U.S.C. § 1504(d), which became effective on
December 8, 1993, and may be applied to administrative reviews
commenced before that date.

States, 748 F.2d 1560, 1565 (Fed. Cir. 1984); American Permac, Inc. v. United States, 10 CIT 535, 538-39, 642 F. Supp. 1187, 1190-91 (1986)).

Moreover, the liquidation of the subject entries was enjoined by court order under 19 U.S.C. § 1516a(c)(2) when Fujitsu General Limited challenged Commerce's Final Results of February 11, 1991 in the CIT. The Federal Circuit issued a decision affirming the Modified Final Results of February 11, 1991 on July 3, 1996. See Fujitsu General Ltd., 88 F.3d 1034.

On September 16, 1997, Commerce published notice of the Federal Circuit's July 3, 1996, decision affirming Commerce's Modified Final Results of February 11, 1991. Commerce stated, "As there is now a final and conclusive court decision in this action, we are amending our final results of review in this matter and we will subsequently instruct the U.S. Customs service to liquidate entries subject to this review." Television Receivers, Monochrome and Color, From Japan, 62 Fed. Reg. 48,592 (Dep't Commerce, Sept. 16, 1997)(notice of final court decision and am. final results admin. review). On September 26, 1997, Commerce sent its liquidation instructions to Customs via e-mail. See Liquidation Instructions. The instructions stated, "These instructions constitute the immediate lifting of suspension of liquidation of

entry summaries for the merchandise and periods listed . . . [,]"

and directed Customs to assess an antidumping rate of 26.17% *ad
valorem* on the subject entries.  Id.

Fujitsu argues that, for the purposes of § 1504(d), Customs
(as well as Commerce) had notice that the court-ordered suspension
of liquidation was removed on July 3, 1996, the date the Federal
Circuit entered its judgment in Fujitsu General Ltd., 88 F.3d 1034.
See Pl.'s Mem. in Supp. of Mot. SJ II at 10.  Because Customs did
not liquidate the subject entries until over a year later, Fujitsu
maintains, "well after the six months permitted by 19 U.S.C. §
1504(d), the subject entries must be deemed liquidated by operation
of law . . . ."  Id.

In raising its deemed liquidation argument, Fujitsu seeks to
invoke this Court's jurisdiction under 28 U.S.C. § 1581(i)(1994),[7]

---

[7]That provision states,

> In addition to the jurisdiction conferred upon the
> Court of International Trade by subsections (a)-(h) of
> this section and subject to the exception set forth in
> subsection (j) of this section, the Court of
> International Trade shall have exclusive jurisdiction
> of any civil action commenced against the United
> States, its agencies, or its officers, that arises out
> of any law of the United States providing for-
>> (1) revenue from imports or tonnage;
>> (2) tariffs, duties, fees, or other taxes on
>> the importation of merchandise for reasons
>> other than the raising of revenue;

the residual jurisdiction provision.  See id. at 7 n.1.  "Section 1581(i) jurisdiction[, however,] may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate."  Norcal/Crosetti Foods, Inc. v. United States, 963 F.2d 356, 359 (Fed. Cir. 1992)(quoting Miller & Co. v. United States, 824 F.2d 961, 963 (Fed. Cir. 1987)).  Defendant submits that Fujitsu could have invoked this Court's jurisdiction under subsection (a) of § 1581 to raise its deemed liquidation claim; therefore, Fujitsu cannot invoke this Court's residual jurisdiction under § 1581(i).  See Def.'s Opp'n to Pl.'s Mot. SJ II at 5-14.  Thus, we must first assess whether Fujitsu could have obtained jurisdiction for its deemed liquidation argument under § 1581(a) before determining whether Fujitsu may invoke jurisdiction under § 1581(i).

---

> (3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
> (4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.
> . . . .

28 U.S.C. § 1581(i).

Under 28 U.S.C. § 1581(a), the CIT has exclusive jurisdiction of any civil action commenced to contest the denial by Customs of a protest pursuant to 19 U.S.C. § 1515 (1994). Importers protest Customs decisions under the procedures outlined in 19 U.S.C. § 1514. Under § 1514(a), a protest may only be filed against certain enumerated Customs "decisions."[8] Fujitsu argues that its deemed liquidation claim does not involve a protestable decision of Customs, and therefore, the Court has jurisdiction to review the issue under 28 U.S.C. § 1581(i). See Pl.'s Mem. in Supp. of Mot. SJ II at 7 n.1.

---

[8]The provision specifies the following Customs' decisions, "including the legality of all orders and findings entering into the same," that may be protested:

(1) the appraised value of merchandise;
(2) the classification and rate and amount of duties chargeable;
(3) all charges or exactions of whatever character within the jurisdiction of the Secretary of the Treasury;
(4) the exclusion of merchandise from entry or delivery or a demand for redelivery to customs custody under any provision of the customs laws, except a determination appealable under section 1337 of this title;
(5) the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof;
(6) the refusal to pay a claim for drawback; or
(7) the refusal to reliquidate an entry under section 1520(c) of this title . . . .

19 U.S.C. § 1514(a).

The Federal Circuit has explained that, "[t]ypically, 'decisions' of Customs [under § 1514(a)] are substantive determinations involving the application of pertinent law and precedent to a set of facts, such as tariff classification and applicable rate of duty." U.S. Shoe Corp. v. United States, 114 F.3d 1564, 1569 (Fed. Cir. 1997), aff'd, 523 U.S. 360 (1998). Customs does not make a decision in order to effect a deemed liquidation. Rather, a deemed liquidation under 19 U.S.C. § 1504(d) occurs by operation of law. Therefore, where an importer believes its entries were deemed liquidated under § 1504(d), and Customs has not actively liquidated the entries anew, the importer's only remedy, at that point, is to seek a declaratory judgment from the CIT confirming that there was a deemed liquidation under 28 U.S.C. § 1581(i).

Here, however, notwithstanding Fujitsu's contention that the subject entries were deemed liquidated, Customs actively liquidated the entries in November/December 1997 and February 1998. A Customs decision to liquidate certain entries anew after the entries had already been deemed liquidated is a protestable decision under 19 U.S.C. § 1514(a)(5). See Pagoda Trading Corp. v. United States, 804 F.2d 665, 668 (Fed. Cir. 1986). Therefore, once Customs purportedly liquidated the subject entries, Fujitsu could no longer

invoke the CIT's jurisdiction under 28 U.S.C. § 1581(i), because Fujitsu was then afforded an adequate remedy under § 1581(a).

In fact, Fujitsu did attempt to raise its deemed liquidation claim before Customs through the protest procedures of 19 U.S.C. § 1514. Moreover, Fujitsu claims that it raised its deemed liquidation argument within the time limits prescribed by § 1514(c)(3). See Pl.'s Mem. in Supp. of Mot. SJ II at 7 n.1. If so, it would be unnecessary to address whether Fujitsu may invoke this Court's jurisdiction under 28 U.S.C. § 1581(i) to review this issue, because jurisdiction under § 1581(a) would be available. Defendant, however, asserts that, for Protest No. 2704-98-100059 and Protest No. 3001-98-100026, Fujitsu did not submit its deemed liquidation argument to Customs within the time allowed by § 1514(c), and therefore, the Court lacks jurisdiction under 28 U.S.C. § 1581(a). See Def.'s Opp'n to Pl.'s Mot. SJ II at 5.

Defendant concedes, however, that Plaintiff Fujitsu properly raised the deemed liquidation issue for entry no. 86-222766-5 within a timely amendment to Protest No. 5301-98-100053. See Def.'s Opp'n to Pl.'s Mot. SJ II at 14. Therefore, Defendant believes the Court does have jurisdiction under § 1581(a) to hear Fujitsu's deemed liquidation argument as to this entry. See id.

Therefore, we separately address below whether the Court has

jurisdiction over (1) the entries covered by protests 2704-98-100059 and 3001-98-100026 and (2) the entry covered by protest 5301-98-100053.

A.    **Protests 2704-98-100059 and 3001-98-100026**

If Fujitsu filed its deemed liquidation argument within the time limits prescribed by 19 U.S.C. § 1514(c), then this Court would have jurisdiction under 28 U.S.C. § 1581(a) to review the issue in connection with the entries covered by protests 2704-98-100059 and 3001-98-100026.   Section 1514(c)(3) provides that a protest of a liquidation decision must be filed with Customs within ninety days after notice of liquidation.  Customs affords notice of liquidations by posting bulletin notices at the customhouse at the port of entry.  See 19 C.F.R. § 159.9(b)(1997).  "[Such] bulletin notices supply sufficient notice and thus trigger the ninety-day period for protests."  Juice Farms, Inc. v. United States, 68 F.3d 1344, 1346 (Fed. Cir. 1995).

Fujitsu filed Protest No. 2704-98-100059 on February 11, 1998, challenging Customs' assessment of interest on the subject entries liquidated on November 14, 1997, and December 5, 1997.  See Protest No. 2704-98-100059 (Pl.'s Mem. in Supp. of Mot. SJ I, Ex. 1).  On March 11, 1998, Customs denied Fujitsu's protest.  See Pl.'s Mem. in Supp. of Mot. SJ I, Ex. 2.  On April 15, 1998, Fujitsu sent a

letter supplementing Protest No. 2704-98-100059 to Customs asserting its argument that the subject entries were deemed liquidated by operation of law without antidumping duties. See Pl.'s April 15, 1998, Letter to Customs (Pl.'s Mem. in Supp. of Mot. SJ I, Ex. 3). Because Fujitsu filed this letter with Customs well after ninety days of notice of the liquidations, the letter did not constitute a timely protest under § 1514(c)(3).

In addition, Fujitsu filed Protest No. 3001-98-100026 on February 11, 1998, challenging Customs' assessment of interest on the subject entries liquidated on November 28, 1997. See Protest No. 3001-98-100026 (Pl.'s Mem. in Supp. of Mot. SJ II, Ex. 4). On March 30, 1998, Fujitsu filed its deemed liquidation claim to supplement this protest. See Pl.'s Mar. 30, 1998, Letter to Customs (Pl.'s Mem. in Supp. of Mot. SJ II, Ex. 5). Because Fujitsu did not file the deemed liquidation claim with Customs within ninety days of notice of the liquidations, this claim also did not constitute a timely protest under § 1514(c)(3).

Thus, Fujitsu's deemed liquidation claim, for the entries covered by both the 2704-98-100059 and 3001-98-100026 protests, was not a timely protest under § 1514(c)(3). In addition, Fujitsu's deemed liquidation claim for these entries was not timely as an "amendment" or "new ground" under § 1514(c)(1).

Regarding amendments to protests, Section 1514(c)(1) states,

A protest may be amended, under regulations prescribed by the Secretary, to set forth objections as to a decision or decisions described in subsection (a) of this section which were not the subject of the original protest, in the form and manner prescribed for a protest, any time prior to the expiration of the time in which such protest could have been filed under this section.

See also 19 C.F.R. § 174.14(a)(1997)("The amendment may assert additional claims pertaining to the administrative decision which is the subject of the protest, or may challenge an additional administrative decision relating to the same category of merchandise which is the subject of the protest.").

Here, Fujitsu's original protests, No. 2704-98-100059 and No. 3001-98-100026, challenged Customs' assessment of interest on the subject entries liquidated by Customs on November 14 and 28, 1997, and December 5, 1997.  Customs' assessment of interest is a protestable decision under § 1514(a)(3), which covers "all charges or exactions."  See Castelazo & Assoc. v. United States, 126 F.3d 1460, 1462 (Fed. Cir. 1997)(citing New Zealand Lamb Co., Inc. v. United States, 40 F.3d 377, 382 (Fed. Cir. 1994)).  Meanwhile, Fujitsu's deemed liquidation claim, protestable under § 1514(a)(5), challenges a Customs' decision separate from the assessment of interest.  See Castelazo, 126 F.3d at 1462-63 ("Under the statute's structure and language, as well as this court's precedent, Customs'

decisions on charges or exactions, such as assessed interest, are independent of its decisions on liquidation or reliquidation [for the purposes of 19 U.S.C. § 1514].")(citing New Zealand Lamb, 40 F.3d at 382).[9]

If timely under § 1514(c)(1), Fujitsu's deemed liquidation claim would qualify as an amendment to protests 2704-98-100059 and 3001-98-100026. Fujitsu did not, however, submit its deemed liquidation claim to Customs prior to the expiration of time allowed for filing such an amendment, i.e., not within ninety days from notice of the liquidations. See 19 U.S.C. § 1514(c)(1), (3). Thus, Fujitsu's deemed liquidation claim was not timely under § 1514(c)(1) as an amendment to either protest 2704-98-100059 or 3001-98-100026.

The time frame for the raising of a "new ground" is longer

---

[9]Here, for instance, Fujitsu's interest argument challenges Customs' decision to assess interest under 19 U.S.C. § 1677g (1994) on entries for which Fujitsu did not have to actually make cash deposits. Meanwhile, Fujitsu's deemed liquidation argument seeks to void Customs' liquidation of the subject entries entirely on the ground that the entries had already been liquidated by operation of law under 19 U.S.C. § 1504(d). Stated differently, Fujitsu's deemed liquidation argument challenges Customs' decision as to the timing of the liquidation. Accordingly, Fujitsu challenges two separate decisions of Customs for the purposes of 19 U.S.C. § 1514(a). Cf. New Zealand Lamb, 40 F.3d at 381 (rejecting the argument that, "by operation of [19 U.S.C.] § 1677g, the liquidations for increased countervailing duties amounted to assessments of interest . . . .").

than that allowed for an amendment. See 19 U.S.C. § 1514(c)(1)("New grounds in support of objections raised by a valid protest or amendment thereto may be presented for consideration in connection with the review of such protest . . . at any time prior to the disposition of the protest . . . .") Unlike an amendment, however, a new ground is an additional claim challenging a Customs decision under § 1514(a) that an importer already challenged via a timely protest. See id.; see also 19 C.F.R. § 174.28 (1997)("[A] reviewing officer may consider alternative claims and additional grounds or arguments submitted in writing by the protesting party with respect to any decision which is the subject of a valid protest at any time prior to disposition of the protest.")(emphasis added). Thus, Fujitsu's deemed liquidation claim does not constitute a new ground, because, as noted above, deemed liquidation is a protestable decision separate from the assessment of interest under § 1514(a). See Castelazo, 126 F.3d at 1462-63; New Zealand, 40 F.3d at 382.[10]

---

[10]Moreover, it is clear that Fujitsu's deemed liquidation argument submitted to supplement Protest No. 2704-98-100059 would not be timely as a new ground under any circumstance, because it was submitted after Customs' denial of the protest. See 19 U.S.C. § 1514(c)(1); Protest No. 2704-98-100059 (Pl.'s Mem. in Supp. of Mot. SJ I, Ex. 1); Pl.'s Mem. in Supp. of Mot. SJ I, Ex. 2).

Therefore, Fujitsu's deemed liquidation claim, submitted to supplement both protests 2704-98-100059 and 3001-98-100026, was not timely under 19 U.S.C. § 1514(c).  Because the deemed liquidation claim was not timely under § 1514(c), this Court lacks jurisdiction to review the issue under 28 U.S.C. § 1581(a) for the entries covered by these protests.  Moreover, for the purposes of invoking this Court's residual jurisdiction under § 1581(i), jurisdiction under § 1581(a) is not inadequate simply because an importer failed to meet the protest deadline under 19 U.S.C. § 1514(c).  See Juice Farms, 68 F.3d at 1346.  Therefore, because Fujitsu could have invoked this Court's jurisdiction under 28 U.S.C. § 1581(a), and that avenue was not "manifestly inadequate," this Court does not have jurisdiction to review the deemed liquidation claim under § 1581(i).  See  Miller, 824 F.2d at 963.

Despite the well-established rule articulated by the Federal Circuit in Miller, however, Fujitsu argues that this Court has jurisdiction under § 1581(i) to review the deemed liquidation claim--for the entries covered by protests 2704-98-100059 and 3001-98-100026--based on the Federal Circuit's holding in United States v. Cherry Hill Textiles, Inc., 112 F.3d 1550 (Fed. Cir. 1997).  See Pl.'s Mem. in Supp. Mot. SJ II at 5-7; Pl.'s Opp'n to Def.'s Cross-Mot. SJ II at 6-7.

Fujitsu argues that the Federal Circuit's decision in Cherry Hill instructs that Fujitsu did not have to file a protest under 19 U.S.C. § 1514(a) in order to challenge the validity of Customs' purported liquidations in court on the ground that the subject entries had already been liquidated by operation of law. See Pl.'s Mem. in Supp. of Mot. SJ II at 6. Because a § 1514(a) protest was unnecessary, Fujitsu asserts that the Court has jurisdiction to review its deemed liquidation claim under 28 U.S.C. § 1581(i). See Pl.'s Mem. in Supp. of Mot. SJ II at 3, 5.

Cherry Hill does not, however, extend as broadly as Fujitsu would have it. Cherry Hill did not address the issue of whether an importer may invoke the CIT's jurisdiction under 28 U.S.C. § 1581(i) to raise the issue of deemed liquidation in order to invalidate a subsequent liquidation by Customs. Rather, Cherry Hill involved an enforcement action brought by the government for the recovery of customs duties. See United States v. Cherry Hill Textiles, Inc., 19 CIT 792, 792-93, 888 F. Supp. 1202, 1204 (1995). As such, the importer, Cherry Hill Textiles, Inc., and its surety, International Cargo & Surety Insurance Company ("IC&S"), were defendants, and jurisdiction of the CIT was predicated on 28 U.S.C. § 1582(2) & (3). See id. at 793, 888 F. Supp. at 1204. IC&S sought to raise as an affirmative defense that the importer was not

required to pay the duties on the ground that Customs' purported liquidation had already been deemed liquidated at a duty-free rate under 19 U.S.C. § 1504(a). See id. The CIT held that, because IC&S did not protest Customs' liquidation through the procedures prescribed by 19 U.S.C. § 1514, IC&S had waived the opportunity to raise deemed liquidation as an affirmative defense. See id. at 795-96, 888 F. Supp. at 1205-06.

On appeal, and like the CIT, the Federal Circuit rejected IC&S's primary argument that the protest requirement of 19 U.S.C. § 1514 does not apply in a government enforcement action. See Cherry Hill, 112 F.3d at 1557-58. Indeed, the court expressly held that, generally, one must challenge a Customs liquidation through a valid § 1514 protest in order to be entitled to raise the issue in court. See id. at 1557 ("The language of section 1514, that a liquidation will be 'final and conclusive' unless protested, is sufficiently broad that it indicates that Congress meant to foreclose unprotested issues from being raised in any context, not simply to impose a prerequisite to bringing suit.").

The Federal Circuit reversed the CIT, however, on a narrower ground. Despite the general rule that, without timely protest, all liquidations, whether legal or not, become final and conclusive under 19 U.S.C. § 1514, the court concluded that IC&S's deemed

liquidation issue "did not have to be raised through a protest, and
that the trial court should have considered [the] issue on the
merits." Id. at 1558. In so doing, the court distinguished other
Federal Circuit cases that had adhered to the general rule and
denied the importer the right to challenge a Customs liquidation in
court for failure to initiate a § 1514 protest:

> The problem with the liquidation at issue in this case .
> . . is of a different character. The asserted flaw in
> this case is not in the accuracy of the liquidation or
> the lawfulness of the process leading up to it, but in
> the effect that the government seeks to give it--the
> effect of displacing the liquidation that had already
> taken effect by operation of law pursuant to the 'deemed
> liquidation' statute, 19 U.S.C. § 1504(a).

Id. at 1559 (distinguishing Juice Farms, 68 F.3d 1344; Omni U.S.A.,
Inc. v. United States, 840 F.2d 912 (Fed. Cir. 1988); and United
States v. A.N. Deringer, Inc., 66 C.C.P.A. 50 (1979)). Thus, the
Federal Circuit recognized a distinction for a deemed liquidation
argument.

Buttressing the court's reasoning was the potential for abuse
if an importer or surety were required to protest a liquidation in
order to preserve the right to challenge it on the ground of deemed
liquidation. See id. at 1560. The court explained that, if such
were the case,

> [T]here would be nothing, in theory, that would prevent
> Customs from conducting multiple successive liquidations

of the same entry and requiring the importer or surety to assume the burdens of protesting each one. Likewise, Customs could purport to liquidate an entry anew, years after the first liquidation had become final, and thereby impose liability on the importer or surety if the importer or surety were not vigilant in watching for notice of such untimely liquidations or if it were no longer able to undertake the burden of filing and pursuing a protest.

The potential for abuse from a rule requiring protests in such cases is sufficiently plain that we think it unlikely that Congress would have intended the protest requirement to apply so broadly.

Id. at 1560.

Thus, Cherry Hill stands for the proposition that an importer need not protest a purported liquidation by Customs "in order to be entitled to defend against liability on the ground of the deemed liquidation." Id. The case before us, however, is different. Here, Fujitsu does not seek to raise its deemed liquidation claim as a defense; rather, Fujitsu seeks to bring action in this Court under 28 U.S.C. § 1581(i). As noted above, it is well-established that "[s]ection 1581(i) jurisdiction may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." Miller, 824 F.2d at 963. Above, we established that Fujitsu could have protested Customs' purported liquidations under 19 U.S.C. § 1514(a)(5). Such

action would have afforded Fujitsu jurisdiction in this Court under 28 U.S.C. § 1581(a).  Indeed, as demonstrated above, Fujitsu did attempt to raise its deemed liquidation argument before Customs; Fujitsu simply did not meet the timeliness requirement for protests under 19 U.S.C. § 1514(c).  Cherry Hill did not address whether an importer may invoke the CIT's jurisdiction under § 1581(i) to raise the issue of deemed liquidation in order to invalidate a subsequent liquidation by Customs.  To find that Cherry Hill affords Fujitsu jurisdiction under 28 U.S.C. § 1581(i) to raise its deemed liquidation argument in the circumstances of this case would require us to create an exception to the well-established § 1581(i) that we are unwilling to make.

Moreover, our holding does not impair the important policy considerations discussed in Cherry Hill.  As quoted above, the Federal Circuit expressed concern that to deny IC&S the right to defend on the ground of deemed liquidation would allow Customs to conduct multiple liquidations and force the importer or surety to protest each one.  See Cherry Hill, 112 F.3d at 1560.  Such abuse will not result from our decision in this case.

Here, for instance, once Customs liquidated the subject entries, Fujitsu was faced with a curious election of remedies. Fujitsu could have either protested the purported liquidation

through the § 1514 procedure or done nothing and waited for Customs to bring forth an enforcement action.  Had Fujitsu chosen the latter route, Fujitsu would not have been foreclosed--as a defendant--from asserting the affirmative defense of deemed liquidation.  Fujitsu did not choose this remedy, however. Instead, Fujitsu attempted to protest the liquidation under § 1514, but failed to do so within the provision's time limits. Subsequently, Fujitsu brought an action in this Court as plaintiff. Because Fujitsu had an adequate remedy under 28 U.S.C. § 1581(a), however, Fujitsu cannot invoke this Court's jurisdiction under § 1581(i).

Thus, in keeping with Cherry Hill, importers are not required to protest liquidations by Customs on the ground of deemed liquidation.  But if they choose to do so, they must meet the requirements of 19 U.S.C. § 1514 to preserve the right to raise the issue in the CIT as a plaintiff under 28 U.S.C. § 1581(a).  The Court does not have jurisdiction under 28 U.S.C. § 1581(i) to decide whether the purported liquidation by Customs must be invalidated on the ground of deemed liquidation.[11]

---

[11]As indicated above, however, supra pp. 16-17, in a situation where Customs has not yet actively liquidated entries that an importer believes had already been deemed liquidated under § 1504, the importer could invoke the CIT's jurisdiction

Therefore, the Court concludes that it does not have jurisdiction under § 1581(i) to hear Fujitsu's deemed liquidation claims for the entries covered by protests 2704-98-100059 and 3001-98-100026.

**B.     Section 1581(a) jurisdiction and Protest No. 5301-98-100053**

Fujitsu filed Protest No. 5301-98-100053 against Customs' February 27, 1998, liquidation of entry 86-222766-5.  On April 1, 1998, Fujitsu submitted to Customs a supplemental deemed liquidation claim.  See Pl.'s Apr. 1, 1998, Letter to Customs (Pl.'s Mem. in Supp. of Mot. SJ II, Ex. 2).  Because Fujitsu filed the deemed liquidation claim within ninety days of notice of the liquidation, the claim constitutes a timely amendment to Protest No. 5301-98-100053 under 19 U.S.C. § 1514(c).  Therefore, this Court has jurisdiction under 28 U.S.C. § 1581(a) to review whether entry 86-222766-5 was deemed liquidated.

---

under 28 U.S.C. § 1581(i) to obtain a declaratory judgment to that effect.  Once Customs liquidates, however, the importer is precluded from invoking § 1581(i) jurisdiction, because, at that point, Customs has made a protestable decision, thereby creating the avenue to jurisdiction under § 1581(a).

## II. Was entry 86-222766-5 deemed liquidated by operation of law under 19 U.S.C. § 1504(d)?

### A.    Notice to Customs under § 1504(d)

As outlined above, Fujitsu argues that, under § 1504(d), Customs had notice that the court-ordered suspension of liquidation was removed on July 3, 1996, the date the Federal Circuit issued its decision in Fujitsu General Ltd., 88 F.3d 1034, and entered judgment.  See Pl.'s Mem. in Supp. of Mot. SJ II at 10.  Customs liquidated entry 86-222766-5 on February 27, 1998, well over a year after the issuance of this decision.  Therefore, Fujitsu maintains, "The [entry] must be deemed liquidated by operation of law at the rate and amount of antidumping duties asserted at the time of entry by the importer of record, i.e., zero antidumping duties pursuant to 19 U.S.C. § 1504(d)(1994)."[12]  Pl.'s Mem. in Supp. of Mot. SJ II

---

[12]"The amount of duties 'asserted at the time of entry by the importer', within the meaning of § 1504(a) and (d), is not what the importer desires to assert upon entry, but what the importer is required by Customs officers to assert when filing the entry summary."  American Permac, 10 CIT at 544 n.12, 642 F. Supp. at 1195 n.12.

Here, Fujitsu's goods were entered from March 20, 1986, through March 11, 1988.  The goods entered after June 10, 1985, and before March 20, 1987, were subject to a zero cash deposit requirement pursuant to Commerce's final results issued in Television Receiving Sets, Monochrome and Color, From Japan, 50 Fed. Reg. 24,278, 24,283 (Dep't Commerce, June 10, 1985)(final results admin. review)(finding a zero dumping margin for General Corporation).  Likewise, Commerce waived a cash deposit requirement for Fujitsu's goods entered on or after March 20,

at 7-8.

Defendant counters that Customs did not have notice that the suspension of liquidation was removed until Customs received Commerce's Liquidation Instructions of September 26, 1997. See Def.'s Opp'n to Pl.'s Mot. SJ II at 17; Def.'s Reply Br. II at 9. Customs liquidated entry 86-222766-5 on February 27, 1998. Therefore, Defendant maintains, because Customs liquidated the subject entry within six months of receiving notice of the removal of suspension, the entry was not deemed liquidated under § 1504(d).

The issue to be determined, therefore, is when did Customs have notice under § 1504(d) that the court-ordered suspension of liquidation was removed.

In answering this question, it is crucial to keep in mind the context in which the CIT first ordered that liquidation of the subject entries be enjoined. Substantively, the CIT was reviewing

---

1987, and before February 11, 1988, pursuant to the final results issued in Television Receivers, Monochrome and Color, From Japan, 52 Fed. Reg. 8,940, 8,947 (Dep't Commerce, Mar. 20, 1987)(final results admin. review)(finding a *de minimis* dumping margin for Fujitsu General Limited). Fujitsu's entry 110-0639314-1, dated March 11, 1988, was entered after February 11, 1988, and therefore, was subject to a 4.06% cash deposit rate pursuant to the final results issued in Television Receivers, Monochrome and Color, From Japan, 53 Fed. Reg. 4,050, 4,055 (Dep't Commerce, Feb. 11, 1988)(final results admin. review)(finding a 4.06% dumping margin for Fujitsu General Limited).

the final results of an administrative review conducted by
Commerce.    Thus, the CIT reviewed Commerce's <u>Final Results of
February 11, 1991</u> pursuant to 19 U.S.C. § 1516a, which governs
judicial review in countervailing duty and antidumping duty
proceedings.  Under the authority of § 1516a(c)(2), the CIT ordered
that the liquidation of the subject entries be enjoined.

Subsection 1516a(e) explains how liquidation will proceed
where entries are subject to a determination that is being
judicially reviewed pursuant to § 1516a.  The provision states,

> If the cause of action is sustained in whole or in part
> by a decision of the United States Court of International
> Trade or of the United States Court of Appeals for the
> Federal CircuitB
>
>> (1) entries of merchandise of the character
>> covered by the published determination of the
>> Secretary, the administering authority, or the
>> Commission, which is entered, or withdrawn
>> from warehouse, for consumption after the date
>> of publication in the Federal Register by the
>> Secretary or the administering authority of a
>> notice of the court decision, and
>>
>> (2) entries, the liquidation of which was
>> enjoined under subsection (c)(2) of this
>> section,
>
> shall be liquidated in accordance with the final court
> decision in the action.   Such notice of the court
> decision shall be published within ten days from the date
> of the issuance of the court decision.

19 U.S.C. § 1516a(e).  Thus, for purposes of liquidation, the

statute distinguishes entries that are not enjoined from those that are enjoined pursuant to § 1516a(c)(2).

Here, when Fujitsu General Limited brought suit in the CIT challenging Commerce's <u>Final Results of February 11, 1991</u>, the court ordered an injunction enjoining liquidation of the subject entries pursuant to § 1516a(c)(2).  Section 1516a(e)(2) of Title 19 directs that "entries, the liquidation of which was enjoined under [§ 1516a(c)(2)], shall be liquidated in accordance with the <u>final court decision</u> in the action."  (Emphasis added.)  "Final" in the context of § 1516a(e) means "conclusive;" a court decision is conclusive when it can no longer be appealed.  <u>See</u> <u>Timken Co. v. United States</u>, 893 F.2d 337, 339-40 (Fed. Cir. 1990).  Therefore, "§ 1516a(e) requires that liquidation, once enjoined, remains suspended until there is a '<u>conclusive</u> court decision which decides the matter . . . . '"  <u>Hosiden Corp. v. Advanced Display Mfrs. of Am.</u>, 85 F.3d 589, 591 (Fed. Cir. 1996)(quoting <u>Timken</u>, 893 F.2d at 342).

The Federal Circuit issued its decision affirming Commerce's <u>Modified Final Results of February 11, 1991</u> on July 3, 1996.  <u>See</u> <u>Fujitsu General Ltd.</u>, 88 F.3d 1034.  That decision was not conclusive, however, until the time allowed for applying for a writ of certiorari for review in the U.S. Supreme Court expired on

October 1, 1996.[13]  See 28 U.S.C. § 2101(c)(1994)("[A]ny writ of

certiorari intended to bring any judgment . . . in a civil action

. . . before the Supreme Court for review shall be . . . applied

for within ninety days after the entry of such judgment . . . .").

Therefore, contrary to Fujitsu's assertion, the Federal Circuit's

decision of July 3, 1996, could not have served as notice to

Customs of the removal of the court-ordered suspension, because,

under 19 U.S.C. § 1516a(e)(2), the injunction did not dissolve on

that date.[14]  Rather, the injunction dissolved upon the action's

_____

[13]In Timken, the Federal Circuit specifically addressed
whether an appealed CIT decision is a "final court decision"
within the meaning of 19 U.S.C. § 1516a(e).  See 893 F.2d at 339-
40.  In so doing, the court declined to decide "whether a
decision of [the Federal Circuit] is 'final' within the meaning
of § 1516a(e) before the time for application for certiorari to
the Supreme Court expires[,]" since that issue was not before the
court.  See id. at 340 n.5.  The "final court decision" language
of § 1516a(e), however, refers to both CIT and Federal Circuit
decisions.  Therefore, the necessary result of Timken is that,
for the purposes of § 1516a(e), a decision of the Federal Circuit
is not "final" until it is conclusive, i.e., until the time for
applying for certiorari to the Supreme Court expires.

[14]We recognize that, in American Permac, Inc. v. United
States, 191 F.3d 1380, 1381 (Fed. Cir. 1999), the Federal Circuit
stated, "The 'triggering event' for the running of the 6-month
time period under [19 U.S.C. § 1504(d)(1994)] . . . is the
lifting of the suspension on liquidation, which here occurred
[when the CIT finally affirmed the final results of Commerce's
administrative review] . . . ."  This sentence, however, is mere
dicta.  In that case, the court resolved the issue of whether the
1994 version of 19 U.S.C. § 1504(d) could be retroactively
applied to liquidations that had occurred prior to the
provision's effective date on December 8, 1993.  See id.  The

becoming conclusive on October 1, 1996.

Section 1516a(e) also sheds light on when Customs may be charged with notice of the injunction's dissolution for the purposes of § 1504(d). "For purposes of liquidation, . . . court decisions are not executed until the administering agency publishes notice of such decisions in the Federal Register pursuant to 19 U.S.C. § 1516a(e)." Timken Co. v. United States, 13 CIT 454, 456, 715 F. Supp. 373, 375 (1989), aff'd, 893 F.2d 337. Applying § 1516a(e) to a Commerce determination, the Federal Circuit has held that, "[i]f the CIT ([or the Federal Circuit]) renders a decision which is not in harmony with Commerce's determination, then Commerce must publish notice of the decision within ten days of issuance (i.e., entry of judgment), regardless of the time for appeal or of whether an appeal is taken." Timken, 893 F.2d at 341. The court reasoned that § 1516a(e) distinguishes between "final court decision" and "court decision." See id. at 340 ("We are of

---

court held that it could not. See id. Read in context, the court made the above quoted statement not as a holding, but rather to demonstrate that the amended version of § 1504(d), if applied in that case, would have had an impermissible retroactive effect. See id. Under 19 U.S.C. § 1516a(e), a court-enjoined liquidation remains suspended, not until the issuance of a court decision resolving the matter, but until there is a court decision that is conclusive, i.e., no longer subject to appeal. See Hosiden, 85 F.3d at 591.

the opinion that Congress intentionally used the word 'final' only once in § 1516a(e) to convey one meaning, but omitted the word elsewhere in that section . . . to convey another meaning."). Thus, under § 1516a(e), while a liquidation must proceed in accordance with the "final," i.e., conclusive, court decision in the action, the administering agency must publish notice of the adverse court decision within ten days of its issuance. See id. at 340-41.

The court's holding in Timken, however, was limited to entries that have not been enjoined under § 1516a(e)(1). See id. at 338 n.3. For these entries, "the effect of the publication is to indicate that liquidation should no longer take place in accordance with Commerce's determination." Id. at 341.[15] Section 1516a(e) does not expressly address whether, where liquidation is enjoined by court order, Commerce must publish notice that the court action is final and conclusive, thereby terminating the suspension of liquidation, in the Federal Register. Nevertheless, there are two principles we can glean from § 1516a(e) that help to resolve the question of when Customs had notice in our case.

---

[15]Because, pursuant to § 1516a(e), liquidation shall be in accordance with the final court decision in the action, however, "it is [then] necessary to suspend liquidation until there is a conclusive decision in the action." Timken, 893 F.2d at 341.

First, under § 1516a(e), it is clear that issuance of a court decision by itself does not constitute notice for the purposes of liquidation. Rather, the administering agency must publish notice of the court decision in the Federal Register. Here, Commerce is the administering agency; Commerce issued the administrative review determination that was litigated. Customs' role in antidumping matters is purely ministerial. See Mitsubishi Elec. Am., Inc. v. United States, 44 F.3d 973, 977 (Fed. Cir. 1994). Therefore, unless Customs receives direct notice from a court, we cannot attribute notice to Customs of a court decision reviewing a Commerce determination made under 19 U.S.C. § 1516a(a) without publication of notice of the court decision by Commerce in the Federal Register.[16]

Second, if, under § 1516a(e), Commerce's publication in the Federal Register of an adverse court decision constitutes notice to

---

[16]We recognize that the Department of Justice ("DOJ") typically represents both Commerce and Customs in their respective matters before the court. Nevertheless, we decline to attribute notice to Customs of the issuance of a court decision reviewing a Commerce determination under 19 U.S.C. § 1516a simply because the DOJ represents both agencies. As noted above, § 1516a(e) places the obligation to publish notice of the court decision on the agency that authored the litigated determination. See Timken, 13 CIT at 456, 715 F. Supp. at 375. Therefore, it follows that notice under § 1516a(e) by virtue of issuance of a court decision can only be attributed to the administering agency.

Customs that liquidation of entries that are not subject to court injunction should no longer proceed in accordance with the litigated Commerce determination, it logically follows that Commerce's publication in the Federal Register of a <u>conclusive</u> court decision in the action may constitute notice to Customs that a court-ordered suspension of liquidation is removed.

Here, this is precisely what happened. On September 16, 1997, Commerce published notice of the Federal Circuit's decision of July 3, 1996, and of the amended final results. <u>See</u> <u>Television Receivers, Monochrome and Color, From Japan</u>, 62 Fed. Reg. 48,592 (Dep't Commerce, Sept. 16, 1997)(notice of final court decision and am. final results admin. review)("<u>Federal Register Notice</u>"). In its <u>Federal Register Notice</u>, Commerce stated,

> As there is now a final and conclusive court decision in this action, we are amending our final results of review in this matter and we will subsequently instruct the U.S. Customs Service to liquidate entries subject to this review.
>  . . . .
> Pursuant to 19 U.S.C. § 1516a(e), we are now amending the final results of administrative review for television receivers, monochrome and color, from Japan, with respect to [Fujitsu General Limited], for the above-referenced periods. The revised weighted-average margin for these periods is 26.17 percent.

<u>Id.</u>

Thus, applying the necessary implications of § 1516a(e),

Commerce's <u>Federal Register Notice</u> constituted sufficient notice to Customs that the court-ordered injunction had dissolved, because the notice indicated that the litigation suspending liquidation was now conclusive.  Under § 1504(d), Customs must liquidate within six months of receiving notice that a court-ordered suspension is removed.  Here, Commerce published its <u>Federal Register Notice</u> on September 16, 1997; therefore, Customs had notice that the court injunction enjoining liquidation of the subject entries was dissolved on that date.  Customs liquidated entry 86-222766-5 on February 27, 1997; therefore, as a matter of law, the entry was not deemed liquidated under § 1504(d).

### B.  Commerce's delay

While holding that Customs liquidated the subject entry within the time limit prescribed by § 1504(d), the Court does sympathize with Fujitsu's complaint.  The court-ordered injunction dissolved on October 1, 1996.  Yet, Commerce did not issue notice of the suspension's removal until nearly a year later.  Essentially, then, Fujitsu's real claim is against Commerce for its delay in issuing notice and liquidation instructions[17] to Customs.  <u>See</u> Pl.'s Opp'n

---

[17]As discussed above, Commerce, not Customs, determines antidumping rates; therefore, "Customs merely follows Commerce's instructions in assessing and collecting duties."  <u>Mitsubishi</u>, 44 F.3d at 977.  Because Customs does not calculate the antidumping

to Def.'s Cross Mot. SJ II at 12 ("Commerce cannot thwart the plain meaning of [19 U.S.C. § 1504(d)] and the intent of Congress by delaying notice to Customs.").

Section 1504(d), however, clearly indicates that deemed liquidation will occur only if liquidation does not occur within six months of <u>Customs</u>' receiving notice of the removal of a suspension on liquidation.  As explained in section II.A, Customs liquidated the subject entry within six months of receiving notice of the suspension's removal.  Therefore, Fujitsu cannot successfully argue that its merchandise must be deemed liquidated under § 1504(d) as a result of <u>Commerce's</u> delay in issuing notice of the suspension's removal.

Indeed, in the circumstances of this case, such a remedy would be overbroad.  Presumably, Fujitsu stands to escape considerable antidumping liability if its entries were deemed liquidated.  Addressing a similar situation in <u>American Permac</u>, 10 CIT at 546 n.14, 642 F. Supp. at 1197 n.14, this court stated: "The resulting windfall to plaintiffs would penalize not only the [government], by depriving it of revenues, but also plaintiffs' domestic competitors

---

duty rates itself, Customs typically awaits Commerce's instructions before proceeding to collect final antidumping duties.  <u>Cf.</u> 19 U.S.C. § 1673e(a); 19 C.F.R. §§ 353.21 (a), 353.22(c)(10)(1997).

(who played no part in [Commerce's] delay), by depriving them of the protection of the antidumping law."  Moreover, as the court in that case indicated, Fujitsu is not left without a remedy to prevent Commerce delays in the issuance of notice and liquidation instructions to Customs.  Fujitsu could have brought a judicial action to compel Commerce to issue notice and liquidation instructions by virtue of this court's jurisdiction under 28 U.S.C. § 1581(i)(4).  Cf. id. at 540-41, 642 F. Supp. at 1192 (citing Brock v. Pierce County, 476 U.S. 253, 260 n.7; Allen v. Regan, 9 CIT 176, 177-78, 607 F. Supp. 133, 134-35 (1985)); cf. also Timken, 893 F.2d at 342 (affirming the CIT's granting of plaintiff's application for a writ of mandamus, ordering Commerce to publish notice of a court decision within ten days of its issuance pursuant to 19 U.S.C. § 1516a(e)).[18]

---

[18]Although not applicable to the administrative reviews in this case, 19 U.S.C. § 1675(a) was amended in 1994 to provide,

> In a case in which [the final results of an administrative review are] under review under section 1516a of this title and a liquidation of entries covered by the determination is enjoined under section 1516a(c)(2) of this title . . . , [Commerce] shall, within 10 days after the final disposition of the review under section 1516a of this title, transmit to the Federal Register for publication the final disposition and issue instructions to the Customs Service with respect to the liquidation of entries pursuant to the review.

Fujitsu did not avail itself of such a remedy, however, and,
given the undisputed facts here, the Court must hold that Fujitsu's
entry was not deemed liquidated as a matter of law by Commerce's
delay in issuing liquidation notice that the court injunction
enjoining liquidation had dissolved.

**III.    Did Customs properly assess interest on Fujitsu's entries
         under 19 U.S.C. § 1677g?**

**A.    Background**

Upon publication of an antidumping duty order, importers are
required to deposit with Customs estimated antidumping duties on
entries subject to the order pending ultimate liquidation. See 19
U.S.C. § 1673e(a)(3). Upon the completion of subsequent
administrative reviews, Commerce directs Customs to assess the
determined antidumping rate on entries subject to the review and to
continue to collect cash deposits of estimated antidumping duties
on future entries at the rate determined in the administrative

_____

19 U.S.C. § 1675(a)(3)(C)(1994)(effective for Commerce
administrative reviews initiated after January 1, 1995). Thus,
the amendment to § 1675(a) directs that, where liquidation is
enjoined by court order pending the litigation of the final
results of an administrative review, Commerce must publish notice
of the final disposition and issue liquidation instructions to
Customs within ten days of the final disposition. American
Permac instructs that Fujitsu could invoke the CIT's jurisdiction
under 28 U.S.C. § 1581(i) to enforce the statutory deadline. See
10 CIT at 540-41, 642 F. Supp. at 1192; see also Timken, 893 F.2d
at 342.

review.  See 19 U.S.C. § 1675(a); 19 C.F.R. § 353.22(c)(10).

Here, the subject entries were made from March 20, 1986, through March 11, 1988.  The entries were thus subject to the deposit requirements of the administrative reviews whose final results were published on June 10, 1985; March 20, 1987; and February 11, 1988.  See Television Receiving Sets, Monochrome and Color, From Japan, 50 Fed. Reg. 24,278, 24,283 (Dep't Commerce, June 10, 1985)(final results admin. review)(finding a zero dumping margin for General Corporation); Television Receivers, Monochrome and Color, From Japan, 52 Fed. Reg. 8,940, 8,947 (Dep't Commerce, Mar. 20, 1987)(final results admin. review)(finding a *de minimis* dumping margin for Fujitsu General Limited); Television Receivers, Monochrome and Color, From Japan,  53 Fed. Reg. 4,050, 4,055 (Dep't Commerce, Feb. 11, 1988)(final results admin. review)(finding a 4.06% dumping margin for Fujitsu General Limited).  Commerce did not require cash deposits for entries made on or after June 10, 1985, and March 20, 1987, because the dumping margins calculated in the administrative review results published on those dates were zero and *de minimis*.  Commerce did, however, require a 4.06% *ad valorem* cash deposit on entries made on or after February 11, 1988, pursuant to the final results published on that date.  Thus, Fujitsu was not required to make cash deposits of estimated

antidumping duties for its entries until February 11, 1988.

Under 19 U.S.C. § 1677g (1994), interest is made on antidumping duty payments. The provision states,

> Interest shall be payable on overpayments and underpayments of amounts deposited on merchandise entered, or withdrawn from warehouse, for consumption on and after--(1) the date of publication of a countervailing or antidumping duty order under this subtitle or section 1303 of this title, or (2) the date of a finding under the Antidumping Act, 1921.

19 U.S.C. § 1677g. Commerce instructs Customs "to calculate interest for each entry from the date that a cash deposit is required to be deposited for the entry through the date of liquidation of the entry." 19 C.F.R. § 353.24(c)(1997).

Here, upon liquidation, Customs assessed antidumping duties on each subject entry at the final rate, 26.17%, with interest on the total antidumping duty payment calculated from the date of entry to the date of liquidation. Fujitsu, however, argues that, pursuant to § 1677g, interest is only properly assessed on entries for which cash deposits were required. See Pl.'s Mem. in Supp. Mot. SJ II at 14. Fujitsu asserts that, "[w]ith the exception of entry no. 110-0639314-1, the merchandise imported under cover of the subject entries was entered for consumption prior to February 11, 1988, and thus, did not require a cash deposit of estimated antidumping duties[;]" therefore, Fujitsu maintains, interest is not properly

assessable on the entries made before February 11, 1988.  See id.
at 16-17.   Fujitsu bases its argument on the Federal Circuit's
decision in Timken Co. v. United States, 37 F.3d 1470 (Fed. Cir.
1994).

Defendant counters that Customs properly assessed interest on
Fujitsu's entries.  See Def.'s Opp'n to Pl.'s Mot. SJ II at 23-30.
Defendant bases its argument on the Federal Circuit's decision in
Sharp Elec. Corp. v. United States, 124 F.3d 1447 (Fed. Cir. 1997).

### B.   Jurisdiction

Jurisdiction of this issue is predicated on 28 U.S.C. §
1581(a)("The Court of International Trade shall have exclusive
jurisdiction of any civil action commenced to contest the denial of
a protest, in whole or in part, under [19 U.S.C. § 1515].").  As
reviewed earlier, for the Court to exercise jurisdiction under §
1581(a), Fujitsu's interest claim must have been presented to
Customs in the form of a valid protest under 19 U.S.C. § 1514.  See
Koike Aronson, Inc. v. United States, 165 F.3d 906, 908 (Fed. Cir.
1999).   Fujitsu's interest argument satisfies the § 1514
requirements if it was directed toward a protestable Customs
decision and filed within the time limits of § 1514(c).

As previously noted, in Mitsubishi, the Federal Circuit held
that, because of its ministerial role in antidumping matters,

Customs did not make a protestable decision as to the antidumping rate upon liquidation.    See 44 F.3d at 977.  Here, regarding the interest to be assessed on the antidumping duty payment, Commerce's Liquidation Instructions merely directed that "[i]nterest shall be calculated from the date payment of estimated antidumping duties is required through the date of liquidation."  These instructions appear ambiguous as to whether or not interest is assessable on entries for which no estimated duty deposits are required.  Therefore, Customs made a protestable decision in this case because Customs unilaterally determined that, under 19 U.S.C. § 1677g, interest was assessable on Fujitsu's entries for which no cash deposits were required.  Customs' decision was thus protestable under § 1514(a)(3).  See Castelazo, 126 F.3d at 1462 ("We have held that a bill for interest is a 'charge or exaction' that falls under the purview of § 1514(a)(3))(citing New Zealand Lamb, 40 F.3d at 382).

Moreover, Fujitsu's protest of Customs' assessment of interest on its entries was timely.  Under § 1514(c)(3)(B), a charge for interest must be protested within ninety days of the date on which Customs informed the payee of the interest charge.  See New Zealand Lamb, 40 F.3d at 382.  A Customs' liquidation that does not mention interest would not constitute a "decision[] regarding interest for

purposes of starting the running of the § 1514 limitations period against [Fujitsu]." Id.

Here, Fujitsu challenged Customs' assessment of interest on (1) February 11, 1998 (Protest No. 2704-98-100059 and Protest No. 3001-98-100026) against the liquidations dated November 14, 1997, November 28, 1997, and December 5, 1997,; and (2) March 24, 1998 (Protest No. 5301-98-100053) against the liquidation dated February 27, 1998. Because Fujitsu protested Customs' assessment of interest within ninety days of the liquidations, there is no doubt--and no party disputes--that Fujitsu filed its protest within ninety days of Customs' assessment of interest. Therefore, Fujitsu's protest challenging Customs' assessment of interest was timely filed under § 1514(c)(3).

Because Fujitsu's interest argument was raised before Customs in a valid protest under § 1514, this Court has jurisdiction to review the issue under 28 U.S.C. § 1581(a).

**C. Analysis**

The issue is whether, under 19 U.S.C. § 1677g, interest may be assessed on underpayments of antidumping duties where no cash deposits were required for the subject entries. Fujitsu interprets the Federal Circuit's decision in Timken, 37 F.3d 1470, to stand for the proposition that "application of the antidumping interest

provision, 19 U.S.C. § 1677g, is triggered by the posting of cash deposits of estimated antidumping duties."  Pl.'s Mem. in Supp. Mot. SJ II at 17.  Therefore, Fujitsu maintains, where, as here, Commerce did not require cash deposits of estimated dumping duties (with the exception of entry 110-0639314-1), no interest is owing. See id.

It is true that in Timken the court stated, "In order to be liable for or entitled to interest under section 1677g(a), [importers] must have made cash deposits of estimated duties." Timken, 37 F.3d at 1477.  But as the Federal Circuit subsequently pointed out in Sharp, despite that sentence, the Timken decision did not stand for the proposition that interest is assessable only where cash deposits of estimated duties are actually paid, but rather was limited to addressing "the distinction between cases in which a bond is posted and cases in which a cash deposit is required."  124 F.3d at 1449-50.

In Timken, the court held that the "amounts deposited" term of § 1677g(a) "refers solely to cash deposits of estimated duties provided under sections 1671e(a)(3)[(countervailing duty order)] and 1673e(a)(3) [(antidumping duty order)]."  37 F.3d at 1476. Because, in that case, the importers had posted bonds, rather than cash deposits of estimated antidumping duties, the court held that

the interest provision did not apply.  See id. at 1477.

In Sharp, the Federal Circuit addressed whether Customs properly assessed interest under § 1677g(a) on the importer's 100% underpayment of antidumping duties where Commerce had waived the importer's cash deposit requirement under § 1673e(a)(3).  See 124 F.3d at 1449.  In that case, Commerce had waived the deposit requirement because the relevant dumping margin was *de minimis*. See id. at 1448.  As here, the importer argued "that the interest provision only applies, by its express terms, to 'amounts deposited[.]'"  Because the importer had not made a deposit, it argued that no interest was owing.  See id. at 1449.  In response, the court stated,

> We disagree.  To be sure, section 1677g speaks in terms of "amounts deposited," but it also speaks to "underpayments."  Here, the underpayment was 100% of the final assessed duty.  Therefore, interest is due on the entire assessment, unless the provision only applies when "amounts" are actually "deposited."  We hold the provision applies whenever such amounts are statutorily owed, whether or not actually deposited, because any other result would be absurd.

Id.

Cash deposits of estimated antidumping duties are statutorily owed upon the issuance of the antidumping duty order.  See 19 U.S.C. § 1673e(a)(3).  "Under section 1673e(a)(3), a cash deposit acts as a method of payment of preliminary duties" subject to the

antidumping duty order prior to liquidation.  Timken, 37 F.3d at 1477 (emphasis added).  Bonds, conversely, act "as security for undetermined future payments" during the pre-antidumping duty order, investigative phase.  Id. (emphasis added); 19 U.S.C. § 1673b(d)(1)(B).  Pursuant to § 1677g(a), interest is assessable on payments of antidumping duties, but not on instruments serving as security for payments, such as a bond.  Therefore, the "amounts deposited" language of § 1677g(a) simply indicates that the existence of an antidumping duty order (or a countervailing duty order, as the case may be) triggers the application of the interest provision.

Simply because the dumping margin calculated in a subsequent administrative review is found to be zero or *de minimis*, however, does not mean that the importer is no longer statutorily obligated to make a cash deposit on future entries; instead, it means either that the importer is obligated to make a cash deposit of zero, or that the estimated duty is so low that Commerce waives the deposit requirement for the sake of administrative convenience.  The importer's entries are still subject to the antidumping duty order, and thus, the statutory obligation to make cash deposits of estimated antidumping duties is still in place.  See Sharp, 123 F.3d at 1449 (stating that there is "no relevant distinction

between a zero cash deposit and the waiver of a cash deposit for a *de minimis* margin.")(citing <u>American Hi-Fi Int'l, Inc. v. United States</u>, 20 CIT 910, 936 F. Supp. 1032 (1996)).  Therefore, even where the estimated antidumping margin is zero or *de minimis*, interest would be due on the underpayment of antidumping duties under § 1677g(a).  <u>See</u> <u>id.</u>

     "To read section 1677g so literally as to impose liability for interest payments only when cash deposits are actually made would produce absurd results."  <u>Id.</u> at 1450.  For instance, a first importer who actually made an initial statutorily required deposit, no matter how small, would be required to pay interest on additional duties later found owing.  But a second importer whose estimated dumping margin was zero, and therefore, was not actually required to make a cash deposit, would be able to avoid paying any interest on duties later found owing.  This result would occur even if the total interest required to be paid by the first importer was substantially less than any interest obligation imposed on the second importer.  The result would be inequitable as between them. <u>See</u> <u>id.</u>  Where a final assessed antidumping duty rate is greater than the rate at which an importer made deposits upon entry, the true intent of 19 U.S.C. § 1677g is to require the assessment of interest on the underpayment of antidumping duties, whether the

underpayment is 100% or some lesser percentage of the final assessed rate.

Thus, although we acknowledge that the plain language of § 1677g(a) states that interest is only assessed on underpayments of "amounts deposited," we must avoid this interpretation because it would clearly lead to absurd results.  See United States v. Brown, 333 U.S. 18, 26-27 (1948); see also Sharp, 124 F.3d at 1450 (J. Plager, concurring)("[T]his is one of those rare cases in which the purpose of Congress is so manifestly clear and the opposite result so silly, that to rule otherwise and require Congress to say it again with a few additional words would be even sillier.").

Here, Fujitsu's entries were subject to an antidumping duty finding under the Antidumping Act, 1921.  See Television Receiving Sets, Monochrome and Color, From Japan, 36 Fed. Reg. 4,597 (Dep't Treas., Mar. 10, 1971)(antidumping finding).  Therefore, as a matter of law, Customs properly assessed interest on the difference between the amounts deposited by Fujitsu upon entry of its merchandise (zero) and the final antidumping duty rate assessed (26.17% *ad valorem*) pursuant to 19 U.S.C. § 1677g(a).

## IV. Did Customs properly assess interest at a compound, rather than a simple, rate?

Section 1677g(b) provides that the rate of interest to be

charged on overpayments and underpayments of antidumping duties under § 1677g(a) is the rate of interest established under 26 U.S.C. § 6621. In turn, the rate of interest under 26 U.S.C. § 6621 is compounded daily in accordance with § 6622(a)("In computing the amount of any interest required to be paid under this title . . . such interest and such amount shall be compounded daily."). See also Canadian Fur Trappers Corp. v. United States, 884 F.2d 563, 568 (Fed. Cir. 1989)("The [Trade and Tariff Act of 1984] amended section 1677g to provide that interest due under it must be compounded in accordance with 26 U.S.C. § 6621 . . . ."). Nevertheless, Fujitsu claims that Customs' assessment of compound interest was "impermissible" as to the subject entries.[19] See Pl.'s Mem. in Supp. of Mot. SJ II at 19.

In making this argument, Fujitsu does not dispute that the plain language of 19 U.S.C. § 1677g(b) requires that interest

_____

[19]Fujitsu protested Customs' decision to assess interest at a compound rate on the subject entries within its initial protests challenging the decision to assess interest at all. See Protest No. 2704-98-100059 (Pl.'s Mem. in Supp. of Mot. SJ I, Ex. 1); Protest No. 3001-98-100026 (Pl.'s Mem. in Supp. of Mot. SJ II, Ex. 4); Protest No. 5301-98-100053 (Pl.'s Mem. in Supp. of Mot. SJ II, Ex.1). As discussed above, supra Part III.B, Fujitsu's initial protests met the requirements of 19 U.S.C. § 1514; therefore, Fujitsu's compound interest claim also meets the requirements of § 1514. The Court has jurisdiction of this issue under 28 U.S.C. § 1581(a).

assessed on antidumping duty payments must be compounded by virtue of 26 U.S.C. §§ 6621, 6622, nor does Fujitsu argue that § 1677g(b) is unconstitutional.  Instead, Fujitsu first argues that the assessment of compound interest is inconsistent with the remedial nature of antidumping duties.  See Pl.'s Mem. in Supp. of Mot. SJ II at 20.  In this sense, Fujitsu argues that the application of compound interest is contrary to the intent of antidumping law. See id. at 21.

Congress, however, determines the intent of antidumping law, and, under the Trade and Tariff Act of 1984, Congress specifically amended § 1677g to provide that interest on antidumping duty payments must be compounded in accordance with 26 U.S.C. § 6621. See Canadian Fur, 884 F.2d at 568.  Thus, there is simply no sustainable basis for Fujitsu's assertion that the assessment of compound interest is contrary to the remedial intent of antidumping law.

Second, Fujitsu argues that the application of compound interest violates the government's obligation under the Agreement on Implementation of Article VI of the General Agreement on Tariffs and Trade (1994)("WTO Antidumping Agreement").  See Pl.'s Mem. in Supp. of Mot. SJ II at 22.  As a signatory to the Uruguay Round Agreements, the United States has obligations under these

agreements.  See Federal Mogul Corp. v. United States, 63 F.3d 1572, 1581 (1995); see also Statement of Administrative Action, H.R. Doc. No. 316, 103rd Cong., 2nd Sess. (1994), reprinted in Uruguay Round Agreements Act, Legislative History, Vol. VI, at 669. Even assuming the instruction of 19 U.S.C. § 1677g(b) were somehow inconsistent with the WTO Antidumping Agreement, however, an unambiguous statute will prevail over an obligation under the international agreement.  See Federal Mogul, 63 F.3d at 1581; see also 19 U.S.C. § 3512(a)(1)("No provision of any of the Uruguay Round Agreements, nor the application of any such provision to any person or circumstance, that is inconsistent with any law of the United States shall have effect.").  As 19 U.S.C. § 1677g(b) unambiguously provides that interest on antidumping duty payments must be compounded in accordance with 26 U.S.C. § 6621, even if we were so inclined, this Court cannot alter or repeal the clear instruction of the statute.  Therefore, Fujitsu's motion for summary judgment of this issue is denied.

## Conclusion

For the foregoing reasons, the Court denies Fujitsu's motion for summary judgment; Defendant's motion for summary judgment is granted.  Judgment will be entered accordingly.

———————————————
Donald C. Pogue
Judge

Dated:    August 15, 2000
          New York, New York